UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| Brian Click, Harvey Ferran, Nicholas Ingrodi, Brad Jackson, Jeremy Likes, Chris Straight, Antoine Thompson, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Defendant. | Case No. 3:24-cv-00451<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. Defendant CSX Transportation, Inc. ("CSX") operates a twenty-four-hour-a-day, 365-day-a-year business, meaning employees are needed for work on weekends and holidays. While CSX's employees understand that working on weekends and holidays comes with the territory, they did not anticipate having to work through serious illnesses, miss their children's births, or choose between caring for their sick loved ones and keeping their jobs.

2. These activities, of course, make up the core substantive conduct protected by the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Yet, CSX has engaged in a brazen pattern and practice of unlawfully discouraging FMLA leave and retaliating against workers who rely on the FMLA's protections.

3. CSX has done so in three ways. *First*, CSX unlawfully inflates the amount of time employees are charged for FMLA leave. Department of Labor regulations require employers to "account for [FMLA] leave using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave provided that it is not greater than one

hour[.]" 29 C.F.R. § 825.205(a). CSX, however, accounts for FMLA leave by the day instead of by the hour. In other words, if an employee takes FMLA leave for four hours, from 10 p.m. to 2 a.m., CSX unlawfully calculates the leave as two days instead of four hours. CSX's policy has the purpose and effect of unlawfully minimizing the amount of FMLA leave taken by its employees.

4. *Second*, beginning in 2015, the company implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy assigns negative points for absences but allows employees to remove points through subsequent uninterrupted attendance over a specified period of time. Employees who take FMLA leave during the remediation period, however, are deemed ineligible to reduce their points. As a consequence, employees who have taken FMLA leave are treated more unfavorably than those who have not.

5. *Third*, beginning in 2017 or earlier and continuing to present, CSX has terminated or suspended over 100 employees on the allegation that these employees fraudulently took FMLA leave. CSX's large-scale purge of its workforce culminated immediately after the 2017 holiday season. One by one, employees learned that their holiday gift from CSX for the exercise of federally-protected FMLA rights was a suspension or pink slip. CSX's allegations of fraud were not only false but baseless. CSX punished these employees without any evidence of fraud. On the contrary, these workers *substantiated* their entitlement to FMLA leave. CSX terminated or suspended them anyway.

6. CSX's genuine motivations are crystal clear. Through its actions, CSX has sought to chill the lawful use of FMLA leave and punish workers who take it. Honoring the FMLA requires businesses to bear the costs of retaining a greater number of employees to cover all shifts. These costs can be especially acute for businesses like CSX, which operate twenty-four hours a day, seven days a week, 365 days a year, including on weekends and holidays. By disregarding

the FMLA's clear mandate, CSX has saved significant sums of money by reducing its total workforce, limiting its employees' lawful use of FMLA leave, and sending a clear message to the remaining employees: Take FMLA leave at you own peril.

7. CSX, through its conduct, has violated the FMLA's anti-retaliation and anti-interference provisions.

8. Plaintiffs bring this class action to restrain and enjoin CSX from engaging in a pattern and practice of punishing employees for taking FMLA leave and to recover damages caused by CSX's unlawful retaliatory conduct.

## PARTIES

9. Brian Click, who has worked for CSX since 1998, resides in Ashland, Kentucky.

10. Harvey Ferran, who has worked for CSX for nearly seven years, resides in Cloverdale, Indiana.

11. Nicholas Ingrodi, who worked for CSX from 2011 to the incident at issue in this case, resides in Frostburg, Maryland.

12. Brad Jackson, who worked for CSX from 2005 to the incident at issue in this case, resides in Greenwood, South Carolina.

13. Jeremy Likes, who has worked for CSX since 2000, resides in Avilla, Indiana.

14. Chris Straight, who has worked for CSX since 1997, resides in Southpoint, Ohio.

15. Antoine Thompson, who has worked for CSX since 2006, resides in McDonough, Georgia.

16. CSX is headquartered in Jacksonville, Florida and provides freight rail transportation services throughout the country, including in Florida.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over Plaintiffs' FMLA claims under 28 U.S.C. § 1331.

18. Venue is proper under 28 U.S.C. § 1391 because CSX is headquartered in this division and the majority of the at-issue decisions were made by people who work for CSX at its headquarters.

## FACTUAL ALLEGATIONS

## CSX'S COMPANYWIDE PRACTICES

19. CSX operates a twenty-four-hour-a-day, 365-day-a-year business, meaning employees are needed on weekends and holidays.

20. While employees know that employment with CSX means having to work on weekends and holidays, they did not anticipate having to work through illnesses, miss their children's births, or being forced to choose between working and caring for their sick loved ones.

21. Many employees have relied on FMLA leave.

22. Employees' lawful use of FMLA has prevented CSX from reducing its workforce in the way it would like.

23. CSX has therefore sought to curb its employees lawful us of FMLA in three ways.

24. *First*, CSX has sought to limit the amount of FMLA its employees may take by miscounting the amount of leave they take.

25. The FMLA entitles employees to take up to twelve weeks of leave a year.

26. When employees apply for FMLA leave, their doctors approve them for a certain amount of time over a given period.

27. The FMLA requires employers to allow employees to use FMLA leave in the smallest increment of time the employer allows for other forms of leave, as long as that increment

is no more than one hour.

28. CSX counts FMLA usage by the day, *e.g.*, if an employee uses FMLA leave for one standard overnight shift, CSX counts it as the employee taking two days instead of eight hours of FMLA leave.

29. CSX's counting method illegally reduces the amount of FMLA leave its employees may take.

30. *Second*, CSX has sought to deter its employees from using FMLA by, in 2015, implementing an attendance policy called the "Crew Attendance Point System," or "CAPS," which penalizes employees for taking FMLA leave.

31. Under the CAPS policy, CSX assigns points to employees who miss work. When employees accrue a certain number of points, they are terminated. CSX erases points from an employee's record when the employee goes a certain period of time without missing a day of work.

32. However, under the terms of the policy, employees who take FMLA leave during that same remediation period are not eligible to have points erased from their record. For example, an employee who does not miss work for the period specified in the CAPS policy will have points removed from his record. A second employee, who takes a single day off work to attend the birth of his child but is otherwise identically situated to the first employee, retains his points and remains on probation—and at a heightened risk of termination.

33. CSX's attendance policy effectively forces employees to choose between using their FMLA leave or returning to CSX's good graces. They cannot do both.

34. CSX's purpose in enacting the CAPS policy was to discourage the lawful use of FMLA leave and punish employees who took FMLA leave.

35. *Third*, beginning in 2017, CSX has engaged in a concerted campaign to purge itself

of a significant portion of its employees who rely on FMLA leave and scare the remainder of its workforce from taking such leave by disciplining and terminating employees who use FMLA leave on weekends and holidays.

36. CSX's campaign culminated in January of 2018, when CSX charged over 140 of the over 800 employees who took FMLA leave on Christmas Eve, Christmas Day, New Year's Eve, or New Year's Day with a workplace rule violation—dishonesty—and removed them from service without pay for supposedly using their FMLA leave solely to avoid working on a holiday.

37. CSX charged these employees with a workplace rule violation without having any reason to believe any of them had abused their FMLA leave.

38. Under CSX's collective bargaining agreements with its employees' unions, the charged employees had a right to an internal hearing before they could be disciplined. The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, such hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for workplace rule violations. Hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the charged employee. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

39. For many of the charged employees, CSX leveraged the kangaroo-court nature of

its discipline process by telling the employees that it would terminate them if they insisted on their right to a hearing. CSX then offered the employees a waiver, pursuant to which they could admit guilt, forgo the hearing, and receive a suspension without pay in lieu of termination.

40. For the employees who refused to admit to something they had not done and the employees to whom it did not offer a waiver, CSX held pro forma hearings on the spurious charges.

41. At the hearings, CSX unlawfully placed the burden on the employees to reveal more information about their and their loved ones' medical conditions than the FMLA requires.

42. The hearings nevertheless completely refuted CSX's allegation of widespread FMLA fraud. On the contrary, employees pleaded with CSX to consider evidence that they properly exercised their right to FMLA leave on account of their pre-existing—and well known—serious health conditions (or those of their family members). CSX did not listen.

43. After the hearings, CSX either suspended or terminated the overwhelming majority of the charged employees.

44. CSX's remaining employees who rely on FMLA leave are now terrified to exercise their rights under the FMLA. Having received CSX's message loud and clear, CSX's employees now go to all possible lengths to avoid taking FMLA leave.

### THE BELL CASE

45. The above-described conduct is already the subject of a putative class action venued in the District of Maryland, *Bell v. CSX Transportation, Inc.*, No. 18-cv-744.

46. The putative classes in that case have been defined as follows:

**Miscalculation Class:**

Individuals employed by CSX who, at any time from three years preceding the complaint's filing to the resolution of this action, had their FMLA leave counted by increments larger than one hour or the smallest increment of time in which CSX calculates non-FMLA leave, whichever is less.

7

**Attendance Points Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, had attendance points remain on their record solely because they took FMLA leave.

**Discipline or Termination Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, were disciplined or terminated for using FMLA leave.

47. Each of Plaintiffs in this case are members of these putative classes.

48. Accordingly, each of Plaintiffs' claims have been tolled. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

49. Nevertheless, each of Plaintiffs sought to be added as named plaintiffs in the *Bell* case.

50. CSX objected to any of Plaintiffs being added as named plaintiffs in the *Bell* case.

51. Accordingly, Plaintiffs have brought this case.

### PLAINTIFF BRIAN CLICK

52. Plaintiff Brian Click suffers from a serious health condition within the FMLA's meaning.

53. Plaintiff Brian Click's serious health condition results from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

54. Plaintiff Brian Click's serious health condition substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

55. Plaintiff Brian Click requested intermittent FMLA leave for his serious health

condition.

56. CSX approved Plaintiff Brian Click's request for intermittent FMLA leave.

57. Plaintiff Brian Click submitted the paperwork necessary to maintain his intermittent FMLA leave.

58. Plaintiff Brian Click's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

59. From December 23, 2017 at 3:00 a.m. to December 24, 2017 at 11:50 p.m., Plaintiff Brian Click's serious health condition caused him to be unable to safely perform his job.

60. Plaintiff Brian Click therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

61. Thereafter, CSX accused Plaintiff Brian Click of abusing his intermittent FMLA leave and terminated him.

62. CSX had no reason to believe Plaintiff Brian Click was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF HARVEY FERRAN

63. Plaintiff Harvey Ferran suffers from a serious health condition within the FMLA's meaning.

64. Plaintiff Harvey Ferran's serious health condition is also a disability within the ADA's meaning.

65. Plaintiff Harvey Ferran had requested intermittent FMLA leave for his serious health condition.

66. CSX approved Plaintiff Harvey Ferran's request for intermittent FMLA leave.

67. Since then, Plaintiff Harvey Ferran has submitted the paperwork necessary to

maintain his intermittent FMLA leave.

68. Plaintiff Harvey Ferran's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

69. From December 24, 2017 at 10:01 a.m. to December 25, 2017 at 11:28 a.m., Plaintiff Harvey Ferran's serious health condition caused him to be unable to safely perform his job.

70. Plaintiff Harvey Ferran therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

71. Thereafter, CSX accused Plaintiff Harvey Ferran of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was thirty-two days.

72. CSX had no reason to believe Plaintiff Harvey Ferran was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF NICHOLAS INGRODI

73. Plaintiff Nicholas Ingrodi suffers from a serious health condition.

74. Plaintiff Nicholas Ingrodi's serious health condition results from anatomical, physiological, and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

75. Plaintiff Nicholas Ingrodi's serious health condition substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

76. Plaintiff Nicholas Ingrodi requested intermittent FMLA leave for his serious health

condition.

77. CSX approved Plaintiff Nicholas Ingrodi's request for intermittent FMLA leave.

78. Plaintiff Nicholas Ingrodi submitted the paperwork necessary to maintain his intermittent FMLA leave.

79. Plaintiff Nicholas Ingrodi's use of FMLA leave caused negative points under CSX's CAPS system to remain on her record.

80. In 2018, CSX terminated Plaintiff Nicholas Ingrodi because of those points.

## PLAINTIFF BRAD JACKSON

81. Plaintiff Brad Jackson suffers from a serious health condition within the FMLA's meaning.

82. Plaintiff Brad Jackson's serious health condition is also a disability within the ADA's meaning.

83. Plaintiff Brad Jackson had requested intermittent FMLA leave for his serious health condition.

84. CSX approved Plaintiff Brad Jackson's request for intermittent FMLA leave.

85. Since then, Plaintiff Brad Jackson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

86. Plaintiff Brad Jackson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

87. From April 15, 2022 to April 17, 2022, Plaintiff Brad Jackson's serious health condition caused him to be unable to safely perform his job.

88. Plaintiff Brad Jackson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been

approved.

89. Thereafter, CSX accused Plaintiff Brad Jackson of abusing his intermittent FMLA leave and terminated him.

90. CSX had no reason to believe Plaintiff Brad Jackson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JEREMY LIKES

91. Plaintiff Jeremy Likes suffers from a serious health condition within the FMLA's meaning.

92. Plaintiff Jeremy Likes's serious health condition is also a disability within the ADA's meaning.

93. Plaintiff Jeremy Likes had requested intermittent FMLA leave for his serious health condition.

94. CSX approved Plaintiff Jeremy Likes's request for intermittent FMLA leave.

95. Since then, Plaintiff Jeremy Likes has submitted the paperwork necessary to maintain his intermittent FMLA leave.

96. Plaintiff Jeremy Likes's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

97. From December 23, 2021 to December 25, 2021, Plaintiff Jeremy Likes's serious health condition caused him to be unable to safely perform his job.

98. Plaintiff Jeremy Likes therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

99. Thereafter, CSX accused Plaintiff Jeremy Likes of abusing his intermittent FMLA

leave and suspended him without pay for five days.

100. CSX had no reason to believe Plaintiff Jeremy Likes was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF CHRIS STRAIGHT

101. Plaintiff Chris Straight suffers from a serious health condition within the FMLA's meaning.

102. Plaintiff Chris Straight's serious health condition is also a disability within the ADA's meaning.

103. Plaintiff Chris Straight had requested intermittent FMLA leave for his serious health condition.

104. CSX approved Plaintiff Chris Straight's request for intermittent FMLA leave.

105. Since then, Plaintiff Chris Straight has submitted the paperwork necessary to maintain his intermittent FMLA leave.

106. Plaintiff Chris Straight's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

107. From December 24, 2019 to December 25, 2019, Plaintiff Chris Straight's serious health condition caused him to be unable to safely perform his job.

108. Plaintiff Chris Straight therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

109. Thereafter, CSX accused Plaintiff Chris Straight of abusing his intermittent FMLA leave and suspended him without pay for five days.

110. CSX had no reason to believe Plaintiff Chris Straight was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF ANTONIE THOMPSON

111. Plaintiff Antonie Thompson suffers from a serious health condition within the FMLA's meaning.

112. Plaintiff Antonie Thompson's serious health condition is also a disability within the ADA's meaning.

113. Plaintiff Antonie Thompson had requested intermittent FMLA leave for his serious health condition.

114. CSX approved Plaintiff Antonie Thompson's request for intermittent FMLA leave.

115. Since then, Plaintiff Antonie Thompson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

116. Plaintiff Antonie Thompson's use of FMLA leave caused negative points under CSX's CAPS system to remain on her record.

117. From April 19, 2019 to April 20, 2019, Plaintiff Antonie Thompson's serious health condition necessitated him missing work so he could attend a doctor's appointment.

118. Plaintiff Antonie Thompson attempted to use personal leave days so he would be paid for the missed days.

119. CSX rejected his request.

120. Plaintiff Antonie Thompson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

121. Thereafter, CSX accused Plaintiff Antonie Thompson of abusing his intermittent FMLA leave and suspended him for five days without pay.

122. CSX had no reason to believe Plaintiff Antonie Thompson was abusing his

intermittent FMLA leave. Rather, the company punished him for taking time off on a day for which he had tried to use a personal leave day.

## CLASS ALLEGATIONS

123. Plaintiffs Brian Click, Harvey Ferran, Nicholas Ingrodi, Brad Jackson, and Jeremy Likes ("FMLA Plaintiffs") bring FMLA claims against CSX pursuant to Federal Rule of Civil Procedure 23, seeking back pay, monetary relief, other compensatory relief, and injunctive and declaratory relief on behalf of themselves and the following class:

**Miscalculation Class:**

Individuals employed by CSX who, at any time from three years preceding the complaint's filing to the resolution of this action, had their FMLA leave counted by increments larger than one hour or the smallest increment of time in which CSX calculates non-FMLA leave, whichever is less.

**Attendance Points Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, had attendance points remain on their record solely because they took FMLA leave.

**Discipline or Termination Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, were disciplined or terminated for using FMLA leave.

Plaintiffs reserve the right to revise these class definitions based on discovery or other legal developments.

124. Class treatment is appropriate because the class is so numerous that joinder of all members is impracticable. The exact number within the class is unknown, but it may be determined from records maintained by CSX.

125. Class treatment is appropriate because there are questions of law or fact common to the classes, including the following:

    a. whether CSX engaged in a pattern and practice of retaliation against class members on the basis of their use of FMLA leave or interfered with class members' use of FMLA leave;

    b. whether CSX's companywide policy of disqualifying employees who take FMLA leave from having the attendance points expunged violates the FMLA;

    c. whether CSX's companywide policy of counting FMLA use by the day and not the hour violates the FMLA;

    d. whether monetary damages, injunctive relief, and other equitable remedies are warranted; and

    e. whether punitive damages are warranted.

126. Class treatment is appropriate because CSX will raise common defenses to the claims.

127. Class treatment is appropriate because Plaintiffs are typical of the classes' claims, and Plaintiffs will fairly and adequately protect the classes' interests.

128. Class treatment is appropriate because Plaintiffs have retained counsel who are competent, experienced in litigating class actions, and will effectively represent the interests of the classes.

129. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for CSX and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

130. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(2) because CSX has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

131. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

132. Class treatment of is appropriate under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FMLA—INTERFERENCE

133. The FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons, including the employee's serious health condition. See 29 U.S.C. § 2612(a)(l).

134. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." *See* 29 U.S.C. § 2615(a)(l).

135. CSX interfered with, restrained, and denied the exercise of the protected rights of Plaintiffs and the putative class members when it, among other things, miscounted the amount of FMLA leave they used, disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, and disciplined them for using FMLA leave.

136. Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits,

consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

137. CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Plaintiffs and the putative class. As a result, Plaintiffs and the putative class members are entitled to punitive damages.

## COUNT II
## VIOLATIONS OF THE FMLA—DISCRIMINATION

138. The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

139. CSX discriminated against Plaintiffs' and the putative class members' rights under the FMLA when, among other things, it disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, forced them to defend themselves from such charges by having them submit more information about the condition that necessitated their FMLA leave than is allowed under the law, and disciplined them for taking FMLA leave.

140. Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

141. CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Plaintiffs and the putative class. As a result, they are entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all class members, pray for relief as follows:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as Class Counsel;

C. An order expunging all discipline related to the use of FMLA from each of Plaintiffs' and the putative class members' work records, and reinstating those Plaintiffs and putative class members for whom such discipline resulted in termination;

D. An order requiring CSX to pay to Plaintiffs and the putative class members an award for compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, and other damages in an amount to be determined by the trier of fact;

E. An order requiring CSX to pay to Plaintiffs and the putative class members an award for garden-variety emotional distress;

F. An order requiring CSX to pay to Plaintiffs and the putative class members an award for costs (including litigation and expert costs), disbursements, interest, and attorneys' fees;

H. An order enjoining CSX from disqualifying employees who take FMLA leave from having their attendance points reduced and declaring such conduct to be in violation of the FMLA;

I. An order enjoining CSX to cease engaging in a pattern and practice of retaliating against employees for taking FMLA leave and declaring such conduct to be in violation of the FMLA; and

K. Such other relief as the Court deems just and proper.

Date: May 7, 2024                                                                PLAINTIFFS' COUNSEL

/s/ Nicholas D. Thompson
Nicholas D. Thompson (No. 20429)
CASEY JONES LAW
323 N. Washington Avenue, Suite 200
Minneapolis, MN 55401
Phone: (757) 477-0991
Email: nthompson@caseyjones.law