UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| Nicholas Ingrodi, and Brad Jackson,<br><br>Plaintiffs,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Defendant. | No. 3:24-cv-00451<br><br>**AMENDED COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. CSX Transportation, Inc. ("CSX"), one of the largest railroads in the United States, operates a 365-days-a-year business, meaning employees are needed for work on weekends and holidays. While CSX's employees understand that working on weekends and holidays comes with the territory, they did not anticipate having to work through serious illnesses, miss their children's births, or choose between caring for their sick loved ones and keeping their jobs.

2. These activities, of course, make up the core substantive conduct protected by the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (FMLA). Yet CSX has engaged in a brazen pattern and practice of unlawfully discouraging FMLA leave and retaliating against workers who rely on the FMLA's protections.

1

3. CSX has done so in two ways. *First*, in 2015, the company implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy assigns negative points for absences but allows employees to remove points through subsequent uninterrupted attendance over a specified period of time. Employees who take FMLA leave during the remediation period, however, are deemed ineligible to reduce their points. As a consequence, employees who have taken FMLA leave are treated more unfavorably than those who have not. Making matters worse, CSX's attendance policy singles out FMLA leave from other forms of leave. An employee who takes leave for "approved vacation," "personal leave," "jury duty," "work-related illness or injury with valid doctor's note" or "bereavement leave," among others, maintains his eligibility to remove negative points from his record. CSX's attendance policy effectively discriminates against workers who rely on FMLA leave and forces those employees to choose between using their FMLA leave or returning to CSX's good graces—(and avoiding termination)—they cannot do both.

4. *Second*, beginning in 2017 or earlier and continuing to the present, CSX has terminated or suspended hundreds of employees on the allegation that these employees had fraudulently taken FMLA leave. CSX's large-scale purge of its workforce culminated immediately after the 2017 holiday season. One by one, employees learned that their holiday gift from CSX for the exercise of federally

protected FMLA rights was a suspension or pink slip. CSX's allegations of fraud were not only false but baseless. CSX punished these employees without any evidence of fraud. On the contrary, these workers *substantiated* their entitlement to FMLA leave. But CSX terminated or suspended them anyways.

5. CSX's genuine motivations were crystal clear. Through its actions, CSX sought to chill the lawful use of FMLA leave and punish workers who took FMLA leave. Honoring the FMLA requires businesses to bear the costs of retaining a greater number of employees to cover all shifts. These costs can be especially acute for businesses like CSX who operate seven days a week, 365-days-a-year, including on weekends and holidays. By disregarding the FMLA's clear mandate, CSX saved significant sums of money by reducing its total workforce, limiting its employees' lawful use of FMLA leave, and sending a clear message to the remaining employees: take FMLA leave at your own peril.

6. CSX, through its conduct, has violated the FMLA's anti-retaliation and anti-interference provisions. 29 U.S.C. § 2615(a)(1)-(2). These violations were the subject of a putative class action, *Bell v. CSX Transportation, Inc.*, 3:24-cv-00451 (D. Mary.). The plaintiffs in that case forewent seeking to certify a class, and the court then severed their claims and transferred them to where each of them reside.

7. Contemporaneously, the plaintiffs in this case, each of whom were members of the putative class in *Bell*, filed this case, which was also a putative

3

class action regarding the same issues as *Bell*. And like the plaintiffs in *Bell*, the plaintiffs in this case have decided to abandon their class allegations and proceed on an individual basis. Simultaneously, five of the seven plaintiffs reached an agreement with CSX to resolve their claims, leaving only Nicholas Ingrodi and Brad Jackson.

8. Ingrodi and Jackson now file this complaint, which focuses on their individual claims.

## PARTIES

9. Ingrodi, who worked for CSX from 2011 to the incident at issue in this case, resides in Frostburg, Maryland

10. Jackson, who worked for CSX from 2005 to the incident at issue in this case, resides in Greenwood, South Carolina.

11. CSX, a Class I railroad, which ships freight across the eastern United States, is headquartered in this district.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Ingrodi's and Jackson's claims under 28 U.S.C. § 1331.

13. Venue is proper under 28 U.S.C. § 1391 because CSX is headquartered in this district and some of the illegal conduct occurred in this district.

## FACTUAL ALLEGATIONS

14. CSX operates a 365-day-a-year business, meaning employees are needed on weekends and holidays.

15. In 2017, CSX instituted precision scheduled railroading.

16. CSX instituted precision scheduled railroading to increase its profit.

17. One of the ways in which precision scheduled railroading increases profit is by reducing the number of employees.

18. While employees know that employment with CSX means having to work on weekends and holidays, they did not anticipate having to work through illnesses, miss their children's births, or choose between working and caring for their sick loved ones.

19. Many employees have relied on FMLA leave.

20. Employees' lawful use of FMLA has prevented CSX from reducing its workforce in the way it would like.

21. CSX has therefore sought to curb its employees' lawful use of FMLA in two ways.

22. *First*, CSX has sought to deter its employees from using FMLA by, in 2015, implementing an attendance policy, called the "Crew Attendance Point System," or "CAPS," that penalizes employees for taking FMLA leave.

23. Under the CAPS policy, CSX assigns points to employees who miss work. When employees accrue a certain number of points, they are terminated.

CSX erases points from the employees' records when the employees go a certain period of time without missing a day of work.

24.　However, under the terms of the policy, employees who take FMLA leave during that same remediation time period are not eligible to have points erased from their record. Under CSX's attendance policy, in other words, an employee who does not miss work for the period specified in the CAPS policy will have points removed from his record. A second employee, who takes a single day off work to attend the birth of his child but is otherwise identically situated to the first employee, *retains* his points and remains on probation—and at a heightened risk of termination. As a consequence, employees who have taken FMLA leave are treated less favorably than those who did not.

25.　Making matters worse, CSX's attendance policy effectively singles out FMLA leave from other forms of leave. An employee who takes leave for "approved vacation," "personal leave," "jury duty," "work-related illness or injury with valid doctor's note" or "bereavement leave," among others, maintains his eligibility to remove negative points from his record. CSX's attendance policy effectively discriminates against workers who rely on FMLA leave and forces those employees to choose between using their FMLA leave or returning to CSX's good graces—they cannot do both.

26. CSX's purpose in enacting the CAPS policy was to discourage the lawful use of FMLA leave and punish employees who took FMLA leave.

27. *Second*, beginning in 2017 or earlier, CSX has engaged in a concerted campaign to purge itself of a significant portion of its employees who rely on FMLA leave and scare the remainder of its workforce from taking such leave by disciplining and terminating employees who use FMLA leave on weekends and holidays.

28. CSX's campaign culminated in January of 2018, when CSX charged more than 100 employees who took FMLA leave on Christmas Eve, Christmas Day, New Year's Eve, or New Year's Day with a workplace rule violation—dishonesty—and removed them from service without pay for supposedly using their FMLA leave solely to avoid working on a holiday.

29. CSX charged these employees with a workplace rule violation without having any reason to believe any of them had abused their FMLA leave other than they had used FMLA in a pattern that CSX believed was suspicious.

30. To derive what constituted a suspicious pattern, CSX did not use any kind of statistical analysis. Rather, CSX determined what constituted a suspicious pattern via its involved managers' intuition.

31. Under CSX's collective bargaining agreements with its employees' unions, the charged employees had a right to an internal hearing before they could

be disciplined. The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, such hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for workplace rule violations. Hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear, but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the employee charged. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

32. At the hearings, CSX unlawfully placed the burden on the employees to reveal more information about their and their loved ones' medical conditions than the FMLA requires.

**INGRODI**

33. Ingrodi suffers from a condition that requires either inpatient care or continuing treatment by a healthcare provider.

34. When Ingrodi's condition flares up, he is unable to safely do his job.

8

35. Accordingly, Ingrodi requested intermittent FMLA leave.

36. CSX approved Ingrodi's request for intermittent FMLA leave.

37. Nevertheless, pursuant to CSX's CAPS policy, Ingrodi's use of FMLA leave caused negative points to remain on his record.

38. In 2018, CSX terminated Plaintiff Nicholas Ingrodi because of those points.

## JACKSON

39. Jackson suffers from a condition that requires either inpatient care or continuing treatment by a healthcare provider.

40. When Jackson's condition flares up, he is unable to safely do his job.

41. Accordingly, Jackson requested intermittent FMLA leave.

42. CSX approved Jackson's request for intermittent FMLA leave.

43. Thereafter, CSX accused Jackson of abusing his intermittent FMLA leave and terminated him.

44. CSX had no reason to believe Jackson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FMLA—INTERFERENCE

45. The FMLA entitles employees to up to twelve weeks of leave during

9

any twelve-month period for certain reasons, including the employee's serious health condition. *See* 29 U.S.C. § 2612(a)(1).

46. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." *See* 29 U.S.C. § 2615(a)(1).

47. CSX interfered with, restrained, and denied the exercise of Ingrodi's and Jackson's protected rights when it, among other things, disqualified them from having attendance points expunged, charged them with a workplace rule violation for taking FMLA leave, removed them from service for the supposed violations, and suspended and ultimately terminated them for using FMLA leave.

48. Because CSX violated the FMLA, Ingrodi and Jackson are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Ingrodi and Jackson are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

## COUNT II
## VIOLATIONS OF THE FMLA—DISCRIMINATION

49. The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

50. CSX violated Ingrodi's and Jackson's rights under the FMLA when, among other things, it disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, forced them to defend themsleves from such charges by having them submit more information about their conditions that necessitated their FMLA leave than is allowed under the law, and terminated them for taking FMLA leave.

51. Because CSX violated the FMLA, Ingrodi and Jackson are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Ingrodi and Jackson is also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

## **PRAYER FOR RELIEF**

52. Ingrodi and Jackson pray for relief as follows:

- An order reinstating them and expunging all discipline related to the use of FMLA from their work records;

- An order requiring CSX to pay them an award for compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, and other damages in an amount to be determined by the trier of fact;

- An order requiring CSX to pay to them an award for costs

        (including litigation and expert costs), disbursements, interest, and attorneys' fees;

- An order enjoining CSX from disqualifying employees who take FMLA leave from having their attendance points reduced and declaring such conduct to be in violation of the FMLA; and

- An order enjoining CSX to cease engaging in a pattern and practice of retaliating against employees for taking FMLA leave and declaring such conduct to be in violation of the FMLA.

53.    In addition to the foregoing, Ingrodi and Jackson also seeks such other relief as the Court deems just and proper.

Date: May 8, 2025                      PLAINTIFFS' COUNSEL

                                          /s/ Nicholas D. Thompson
                                          Nicholas D. Thompson (No. 20429), Lead Counsel
                                          CASEY JONES LAW
                                          323 N Washington Ave, Suite 200
                                          Minneapolis, MN 55401
                                          Phone: (757) 477-0991
                                          Email: nthompson@caseyjones.law