IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| NICHOLAS INGRODI, and <br> BRAD JACKSON, <br> <br> Plaintiffs, <br> <br> v. <br> <br> CSX TRANSPORTATION, INC., <br> <br> Defendant. | Civil Action No. 3:24-cv-00451 |

**DEFENDANT CSX TRANSPORTATION, INC.'S MOTION TO
DISMISS THE CLAIMS OF PLAINTIFF NICHOLAS INGRODI**

Defendant CSX Transportation, Inc. ("CSX"), pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss the claims of Plaintiff Nicholas Ingrodi on the grounds that they are time-barred.

The Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, has, at most, a three-year statute of limitations. *See* 29 U.S.C. § 2617(c)(1), (2). Plaintiff Nicholas Ingrodi ("Ingrodi") nevertheless filed this suit in May 2024—more than five years after the termination of his employment with CSX (*see* Am. Compl. ¶ 38)—alleging for the first time various FMLA claims against CSX. In particular, Ingrodi alleges that (1) CSX's attendance policy violates the FMLA, and that (2)

he was unlawfully terminated under that policy in 2018.  Despite waiting nearly five years to sue, Ingrodi suggests that his claims are timely because he was a putative class member in *Bell v. CSX Transportation, Inc.*, No. 18-cv-744 (D. Md.), a lawsuit which challenged the legality of CSX's attendance policy on the same basis as Ingrodi does here.  But any tolling associated with *Bell* ended long ago and cannot save his claims.

In *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*"), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554.  This doctrine—which has come to be known as *American Pipe* tolling—can in some cases save otherwise untimely claims.  But the doctrine does not help Ingrodi here.  That is because, in May 2019, the Maryland Court granted summary judgment to CSX on the attendance policy claims.  At that point, any tolling on those claims ended, and the limitations period again began to run.  Even then, however, Ingrodi waited almost five more years—two years longer than the FMLA's maximum limitations period—before filing suit.  Thus, even assuming that Ingrodi's claims were ever tolled, they are still time-barred and should be dismissed with prejudice.

2

## FACTUAL BACKGROUND

**A.     Ingrodi's Employment and CSX's Attendance Policy**

Ingrodi started working for CSX in 2011.  *See* Am. Compl. (ECF 29) ¶ 9.  In 2015, CSX implemented an attendance policy known as "CAPS" under which certain absences result in "negative points" that can eventually be grounds for termination.  *Id.* ¶ 3.  At the same time, by demonstrating good attendance, employees can receive a good attendance credit—*i.e.*, the removal of attendance points from their record.  *Id.*  Employees who miss work for certain designated reasons—including approved vacation, personal leave, jury duty, and bereavement leave—can still receive a good attendance credit.  *Id.*  Employees who take FMLA leave, however, cannot receive the credit.  *Id.*  This policy, Ingrodi alleges, violates the FMLA.  *Id.* ¶¶ 2-3, 47, 50.

**B.     Ingrodi's 2018 Termination**

Ingrodi suffers from an unspecified medical "condition that requires either inpatient care or continuing treatment by a healthcare provider." *Id.* ¶ 33.  When this condition flared up, Ingrodi was unable to safely do his job at CSX.  *Id.* ¶ 34.  He therefore requested intermittent FMLA leave from CSX, and his request was approved.  *Id.* ¶ 35.  Ingrodi does not claim that he received attendance points for any FMLA-covered absences.  *See generally* Am. Compl.  Rather, he alleges that

his "use of FMLA leave caused negative points to remain on his record," and that, "[i]n 2018, CSX terminated [him] because of those points." *Id.* ¶¶ 37-38.

    C.    **The *Bell* Lawsuit**

In March 2018, twenty current or former CSX employees filed suit in the U.S. District of Maryland alleging among other things that CSX's attendance policy violates the FMLA. *See Bell v. CSX Transp., Inc.*, No. 18-cv-744 (D. Md. 2018), ECF No. 1 (Compl.) (Chiavetta Decl. Ex. 1).[1] The *Bell* plaintiffs' legal theory was the same as Ingrodi's; they claimed that CSX's attendance policy was unlawful insofar as employees who took FMLA leave were disqualified from receiving a good attendance credit. *Id.* ¶¶ 4, 43-46. In addition to bringing their own individual claims, the *Bell* plaintiffs purported to sue on behalf of a class defined to include (*id.* ¶ 257):

> "Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, had attendance points remain on their record solely because they took FMLA leave."

CSX moved for summary judgment on the *Bell* plaintiffs' attendance policy claims and, in May 2019, the Maryland Court granted that motion. *See Bell v. CSX Transp., Inc.*, No. 18-cv-744, ECF No. 50 (Memorandum Opinion) at 13 ("The

---

[1] Relevant pleadings from the *Bell* case are attached as exhibits to the Declaration of Thomas Chiavetta submitted in support of this motion.

Court concludes that, as a matter of law, the CAPS Policy does not violate the FMLA.") (Chiavetta Decl. Ex. 2). Ingrodi did not sue until almost five years later. *See* Compl. (ECF 1).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) should be granted if the complaint fails to allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). In reviewing a motion to dismiss, the court accepts as true all facts alleged in the Complaint and reviews those facts in the light most favorable to the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Dismissal for untimeliness under Rule 12(b)(6) is appropriate if it is "apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## ARGUMENT

**I.  INGRODI'S CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED WITH PREJUDICE**

The FMLA's statute of limitations is no longer than three years. 29 U.S.C. § 2617(c)(2). Yet Ingrodi waited approximately six years after his termination to bring his FMLA claims against CSX. Those claims are therefore time-barred, and no tolling doctrine can save them.

### A. Ingrodi Filed Suit Well After the Limitations Period

CSX terminated Ingrodi's employment in 2018. *See* Am. Compl. (ECF 29) ¶ 38. Thus, in order to be timely, any FMLA claims regarding Ingrodi's termination would ordinarily need to be filed by 2021 at the latest. *See* 29 U.S.C. § 2617(c)(2). This suit was not filed until May 2024. *See* Compl. (ECF 1).

Moreover, because Ingrodi has not worked for CSX since 2018, he has not been subject to CSX's attendance policy since 2018. Accordingly, to the extent Ingrodi wished to bring FMLA claims regarding CSX's attendance policy, absent any tolling, he would likewise typically only have until 2021 to do so. Yet he did not file suit until April 2024, and so his FMLA claims are presumptively time-barred.

### B. *American Pipe* Tolling Does Not Save Ingrodi's Claim

Ingrodi's Complaint suggests that, despite the stale nature of his claims, they are nevertheless timely because he was a putative class member in *Bell*. *See* Am. Compl. ¶¶ 6-7. Any such argument is doomed to fail.

In *American Pipe*, the Supreme Court first articulated a class-action-specific equitable-tolling rule. 414 U.S. 538. The Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted

6

to continue as a class action." *Id.* at 554.² Without that tolling rule, potential class members would need to file individual suits or motions to intervene to preserve their rights, creating an inefficient multitude of unnecessary lawsuits. *Id.* at 553–55. Those unnecessary lawsuits, the Court explained, would defeat the point of the class action mechanism. *Id*. at 553–54.

Nevertheless, *American Pipe* tolling has its limits. Even assuming the doctrine applies in a given case, tolling continues only as long as the class claims remain viable. *See, e.g.*, *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1378 (11th Cir. 1998) ("[T]olling of the statute of limitations ceases when the district court enters an interlocutory order denying class certification.") *Yang v. Odom*, 392 F.3d 97, 101-02 (3d Cir. 2024) (same); *Giavoanniello v. ALM Media, LLC*, 726 F.3d 106, 116 (2d Cir. 2013) (same); *see also Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 380 (6th Cir. 2021) (courts are "unanimous that the dismissal of an uncertified class action terminates *American Pipe* tolling and resumes the running of statutes of limitations as to absent class members").

That rule makes sense. Once a class claim has been nixed (either because the case or claim was dismissed on the merits or because class certification was

---

2 *American Pipe* itself was limited to putative class members who sought to intervene, but the Court later extended the doctrine to all absent putative class members. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations to all asserted members of the class, not just as to intervenors.").

denied), the putative class member can no longer reasonably rely on the named plaintiffs to protect their rights—even if there is some hope that the district court might reconsider its decision or that the adverse ruling might ultimately be overturned on appeal. *Cf. Armstrong*, 138 F.3d at 1380-81 ("No reasonable person would rely on the hope that either the district court or this court might someday determine that the suit should have proceeded as a class action."). Instead, tolling ends and putative class members "must act independently to protect their rights." *Id.* at 1378.

Here, even assuming *American Pipe* tolling ever applied, any such tolling ended in May 2019, when the Court granted summary judgment to CSX on the *Bell* plaintiffs' attendance policy claims. At that point, given that his claims rest on the legality of CSX's attendance policy, it was no longer reasonable for Ingrodi to rely on the *Bell* plaintiffs to protect his rights. Even so, Ingrodi waited another five years—nearly double the length of the maximum limitations period—before filing suit. That delay was fatal to his claims. Ingrodi's claims are time-barred and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Ingrodi's claims with prejudice.

8

|  |  |
|---|---|
| May 23, 2025 | <u>*/s/ Thomas R. Chiavetta*</u><br>Thomas R. Chiavetta<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, DC  20001<br>Telephone:  (202) 879-3975<br>Facsimile:  (202) 626-1700<br>tchiavetta@jonesday.com<br><br>*Admitted pro hac vice*<br><br>*Counsel for Defendant* |

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned hereby certifies that he has conferred via email with counsel for Plaintiffs, and counsel has confirmed that Plaintiffs oppose this motion.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2025, a true and accurate copy of the foregoing was filed using the CM/ECF system which will send notification of such filing to Plaintiffs' counsel.

*/s/ Thomas R. Chiavetta*