**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| NICHOLAS INGRODI, and<br>BRAD JACKSON,<br><br>Plaintiffs,<br><br><br>v.<br><br>CSX TRANSPORTATION, INC.,<br><br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:24-cv-00451 |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT REGARDING <u>PLAINTIFF JACKSON'S CLAIMS</u>**

# TABLE OF CONTENTS

**Page**


I. PLAINTIFF'S OPPOSITION IS INSUFFICIENT TO SURVIVE SUMMARY JUDGMENT ........ 2

A. Jackson Confuses the Governing Law ........ 2

B. Jackson Cannot Prove Retaliation ........ 6

1. Jackson's attacks on the investigative process mischaracterize the record and fail to establish pretext. ........ 6

2. Jackson's attack on the evidence against him does not establish pretext. ........ 7

a. The timing and pattern of Jackson's holiday mark-offs, combined with his history of admitted misuse, reasonably led CSX to conclude he was again misusing FMLA leave. ........ 8

b. Jackson's failure to adequately explain the suspicious pattern of holiday mark-offs was legitimately taken into account. ........ 10

c. There is no evidence that any of the managers who decided on Jackson's discipline did not truly believe he had been dishonest. ........ 11

3. Jackson fails to adequately rebut CSX's comparator evidence. ........ 11

C. Jackson's Remaining Claims Fail ........ 12

CONCLUSION ........ 12

CERTIFICATE OF SERVICE ........ 14

## TABLE OF AUTHORITIES

**Page**

**CASES**


*Chukes v. Sailormen Inc.*,
648 F. App'x 779 (11th Cir. 2016) .......... 5

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) .......... 10

*Damon v. Fleming Supermarkets*,
196 F.3d 1354 (11th Cir. 1999) .......... 2

*Davis v. CocaCola Bottling Co. Consol.*,
516 F.3d 955 (11th Cir. 2008) .......... 12

*EEOC v. Total Sys. Servs., Inc.*,
221 F.3d 1171 (11th Cir. 2000) .......... 1, 3, 11

*Elrod v. Sears, Roebuck and Co.*,
939 F.2d 1466 (11th Cir. 1991) .......... 2

*Hayes v. Wall Recycling, LLC.*,
729 F. Supp. 3d 553 (E.D.N.C. 2024) .......... 11

*Haywood v. Lock*e,
387 F. App'x 355 (4th Cir. 2010) .......... 11

*Lowe v. Ala. Power Co.*,
244 F.3d 1305 (11th Cir. 2001) .......... 3, 4

*Murray v. UBS Sec., LLC*,
601 U.S. 23 (2024) .......... 4

*Pack v. CSX Transp., Inc.*
No. 2:24-cv-688, 2026 WL 105022 (S.D. W. Va.) .......... 5

*Parker v. CSX Transportation, Inc.*,
2021 WL 3022703 (N.D. Ala. July 16, 2021) .......... 2

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Resol. Tr. Corp. v. Dunmar Corp.*,
43 F.3d 587 (11th Cir. 1995) .................................................................... 12

*Roberts v. Rayonier, Inc.*,
135 F. App'x 351 (11th Cir. 2005) ........................................................... 4

*Rodriguez v. Cargo Airport Servs. USA, LLC*,
648 F. App'x 986 (11th Cir. 2016) ........................................................... 5

In order to prevail, Plaintiff Brad Jackson ("Jackson") must show that CSX's stated reason for disciplining him was pretext for retaliation – *i.e.*, that CSX did not believe in good faith that he misused FMLA leave over Easter 2022 and disciplined him instead for retaliatory reasons. He cannot do so.

Jackson does not dispute that, under Eleventh Circuit law, an honest belief that an employee has misused FMLA leave is sufficient to defeat FMLA claims. Instead, he argues that CSX's belief that he misused FMLA leave was not honestly held because the company did not do enough to investigate or have enough evidence to discipline him. Jackson is wrong. Under binding Eleventh Circuit precedent, the test is whether CSX made "an honest choice" when deciding on discipline, not whether it conducted a flawless investigation. *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000). And, at all times, the burden of proof remains on Jackson, not on CSX.

Unable to satisfy that burden, Jackson suggests that the legal standard to sustain an honest belief defense is more demanding than it actually is. He claims that because his FMLA use on holidays was not compared with his use on non-holidays, CSX could not discern any meaningful information from his repeated holiday mark-offs. Jackson also tries to sweep under the rug the fact that he has twice ***admitted*** to misusing FMLA leave, after having received multiple warnings about it —facts CSX was aware of when it charged and disciplined him. By arguing

over the "reasonableness" of CSX's investigation, Jackson is essentially asking the Court to decide whether his discipline was fair and not whether it was retaliatory. That is not the Court's function. CSX is entitled to summary judgment.

## I. PLAINTIFF'S OPPOSITION IS INSUFFICIENT TO SURVIVE SUMMARY JUDGMENT

### A. Jackson Confuses the Governing Law

To establish pretext, Jackson must prove that CSX did not believe in good faith that he used FMLA leave dishonestly and instead acted with a retaliatory motive. (Doc. 71 (CSX's Mot. for Summary Judgment ("Mot.")) 15). He cannot.

**1.** Citing *Parker v. CSX Transportation, Inc.,* 2021 WL 3022703 (N.D. Ala. July 16, 2021), Jackson attempts to reframe the pretext analysis as whether CSX conducted a "reasonable investigation." (Doc. 79 ("Opp.") 1.) While CSX certainly believes its investigation was reasonable, that is not the correct inquiry.

Courts are not "super-personnel departments;" they decide whether discipline was discriminatory, not whether it was "prudent or fair." *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1361 (11th Cir. 1999). Consistent with these principles, an employer can lawfully dismiss an employee based on a good faith belief he was dishonest. (Mot. 13-14.) And, when an investigation produces conflicting evidence, good faith turns on whether the employer made "an honest choice" between the two competing accounts—nothing more. *Total Systems*, 221 F.3d at 1176.

In *Total Systems*, an employer fired an employee after concluding she had lied during an internal investigation. 221 F.3d at 1171. The employee, like Jackson, maintained that she had told the truth, and that her dismissal was retaliatory. *Id*. at 1173, 1175. EEOC, suing on the employee's behalf, argued that summary judgment was inappropriate because a dispute existed as to whether the employee had actually lied. *Id.* at 1175. The Eleventh Circuit rejected this argument; it said that "[w]e cannot agree that an employer must be forced to prove . . . more than its good faith belief that [the employee had lied]." *Id.* at 1175-76. The Court explained that, in the face of conflicting evidence, "the employer can lawfully make a choice between the conflicting versions . . . as long as the choice is an honest choice." *Id.* at 1176. This does not require the employer to show that it left no stone unturned, or that it conducted a flawless or "reasonable" investigation (*id.*):

> "[I]n carrying out its business and in making business decisions (including personnel decisions), the employer can lawfully act on a level of certainty that might not be enough in a court of law. In the workaday world, not every personnel decision involving a false statement [by an employee] . . . has to be treated as something like a trial for perjury."

This standard governs here. Quoting *Lowe v. Ala. Power Co.*, 244 F.3d 1305, 1308 (11th Circ. 2001), Jackson nevertheless maintains (Opp. 9) that "[t]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." But the *Lowe* court was interpreting a specific ADA regulation; it was not expressing a principle applicable

to discrimination cases generally. 244 F.3d at 1308. *Roberts v. Rayonier, Inc.*, 135 F. App'x 351 (11th Cir. 2005) is likewise distinguishable. There, the employer had not conducted any investigation whatsoever; it simply assumed that plaintiff had engaged in misconduct and terminated him for it. 135 F. App'x at 360. In that context, the Court found that "the lack of evidence of significant investigation" could undermine the employer's honest belief defense. *Id.* at 365. In doing so, however, the Court did not overturn or modify the standard set forth in *Total Systems*. Nor does *Roberts* apply here, where CSX held an investigatory hearing before dismissing Jackson. (Mot. 9-11.)

**2.** Plaintiff also suggests (Opp. 17) that, in light of *Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024), CSX's motive for dismissing Jackson is irrelevant. That is false. *Murray* involved a claim brought under the Sarbanes-Oxley Act's whistleblower provision – a law that requires an employee to prove only that protected conduct was a "contributing factor" in the adverse employment action. *Id.* at 449-50. The FMLA, by contrast, requires "but-for" causation – a substantially higher burden of proof. *See* Mot. 13. *Murray* has no application here whatsoever. And, in fact, even post-*Murray*, the Eleventh Circuit has continued to emphasize the relevance of motive in deciding FMLA retaliation claims. *See, e.g.*, *James v. FedEx Freight, Inc.*, No. 24-12907, 2025 WL 3121784, at *5 (11th Cir. 2025).

**3.** Lastly, Jackson's reliance (Opp. 2–3) on other CSX cases in which courts have denied summary judgment is unavailing. All but one of those cases arose from the same factual context – CSX's large-scale suspension and dismissal of employees for FMLA abuse over Christmas 2017/New Year's 2018.[1] Jackson's dismissal, by contrast, was a discrete event that occurred more than four years later. Moreover, none of the other cases involved an employee like Jackson who had twice admitted FMLA misuse – on top of three prior warnings – before his dismissal. Jackson's case must rise and fall on its own facts.

Ultimately, to survive summary judgment, Jackson must do more than show that someone else looking at the same facts might reach a different conclusion. Nor can he prevail by arguing over the adequacy of CSX's investigation. *See Rodriguez v. Cargo Airport Servs. USA, LLC*, 648 F. App'x 986, 991 (11th Cir. 2016) ("[plaintiff]'s arguments regarding the adequacy of the investigation . . . do not call into question whether . . . the decisionmaker[ ] gave an honest explanation for his decision"); *Chukes v. Sailormen Inc.*, 648 F. App'x 779, 781 (11th Cir. 2016) (affirming summary judgment where "the district court

[1] The lone exception, *Pack v. CSX Transp., Inc.* No. 2:24-cv-688, 2026 WL 105022 (S.D. W. Va.), involved an employee who was dismissed for misusing FMLA leave in 2017. CSX concluded that Pack had used leave dishonestly after he initially called and requested personal leave so that he could register his kids for school and then, only after being told that personal leave was unavailable, asked to be marked off FMLA instead. *See id.* at *1–2. CSX reasonably believed under those circumstances that Pack had used FMLA leave dishonestly, and a jury agreed: it ruled in CSX's favor, finding that Pack's dismissal was not retaliatory.

correctly determined that, even if [the supervisor]'s investigation was flawed, [plaintiff] offered no evidence that his investigation was a pretext for discrimination"). Jackson must show that CSX did not truly believe he had used FMLA leave dishonestly and acted instead with a retaliatory motive. He cannot.

### B. Jackson Cannot Prove Retaliation

In an effort to prove pretext, Jackson attacks the sufficiency of the evidence against him. None of this evidence shows bad faith.

#### 1. Jackson's attacks on the investigative process mischaracterize the record and fail to establish pretext.

Absent evidence of pretext, Jackson takes to mischaracterizing the record. He accuses CSX's tracking system of "flagg[ing] for discipline any employee who had taken FMLA leave on or adjacent to a weekend or other rest day four times in the past 12 weeks." (Opp. 4.) That is not what happened. Johnson reviewed Jackson's FMLA mark-off over Easter weekend in 2022 along with similar FMLA mark-offs over Martin Luther King Day weekend, Super Bowl Sunday, and Valentine's Day that year, and believed that his Easter weekend mark-off was "not for legitimate medical reasons but to avoid working on holidays and other special occasions." (*See* Doc. 71-21 (Jolanda Johnson Decl.) ¶¶ 12-13.) The process described by Jackson had nothing to do with it.[2]

[2] In the testimony cited, Johnson was referring to a process used to identify suspicious patterns of FMLA mark-offs on weekends or before or after time off —not holidays. Moreover, just because an employee is identified through that process does not mean that they will be disciplined. *See*

Jackson also criticizes the hearing officer for failing to ask him any questions about the doctor's note he submitted. (Opp. 8.) Nevertheless, Jackson does not dispute that the managers who actually decided on his dismissal – Jones and Ferrera – reviewed the note and concluded it was insufficient; he just disagrees with their decision.[3] *See* Doc. 71-20 (June 2022 Dismissal Letter) (explaining why the doctor's note was deemed insufficient); Doc. 71-19 (June 2, 2022 Email from Jones to Ferrera) at 1 (rejecting the note because "[t]here was nothing in [it] connecting the employee's absence to his FMLA approved condition[,]" and it did not contain any "specific information" regarding why Jackson could not work on the days listed). He cannot establish that CSX acted in bad faith.

**2. Jackson's attack on the evidence against him does not establish pretext.**

Using the proper framework, Jackson cannot prove retaliation. He has not offered any evidence that any of the managers involved in his dismissal did not truly believe he had used FMLA leave dishonestly. Instead, he claims that various

---

Doc. 79-1 (Johnson Dep.) 38:21-39:24, 82:16-83:11. CSX further reviews the facts and circumstances surrounding the mark-offs before deciding whether to warn or charge the employee for FMLA misuse. *Id.* at 98:20-22 ("the employee is provided the opportunity to provide an explanation to [sic] the pattern that's been identified"). And, if the employee is charged, they are entitled to a hearing before any discipline is assessed. *See* Doc. 71-14 (Jones Decl.) ¶¶ 11-12. Jackson mischaracterizes the process.

[3] Moreover, to the extent he believes additional information would have been helpful, Jackson had every opportunity to provide it. Indeed, prior to closing the hearing, Transue asked Jackson whether he wished to present any more evidence, and Jackson and his union representative both responded, "No."

"concerns raised by the court in *Parker*, and reemphasized by the court in *Brown*, appl[y] with equal force here." (Opp. 10.) None of these "concerns" preclude summary judgment. (Mot. 19-20.)

a. *The timing and pattern of Jackson's holiday mark-offs, combined with his history of admitted misuse, reasonably led CSX to conclude he was again misusing FMLA leave.*

Jackson admits that, in the first half of 2022, he marked off FMLA for all or a substantial portion of Martin Luther King Day weekend, Super Bowl Sunday, Valentine's Day, Good Friday, and Easter Sunday. *See* Mot. 7-10. He also admits that he received three prior warnings regarding his pattern of FMLA use on holidays and weekends, including a final warning just months before Easter. *See* Mot. 7-9. Perhaps most significantly, Jackson admitted to misusing FMLA not once, but twice before. *See* Mot. 8-9. This history supported CSX's belief that Jackson used FMLA leave dishonestly and not for legitimate medical reasons. (*Id*.)

Jackson challenges CSX's assertion that the timing of his holiday mark-offs was "inherently suspicious" (Opp. 13) but, in doing so, he is merely substituting his own perception for that of the CSX decisionmakers. A reasonable person could easily find it improbable that flare-ups of Jackson's anxiety, insomnia, and sleep apnea —conditions which he himself admits have no correlation whatsoever to weekends or holidays (*see* Ex. A (Doc. 71-2) (Jackson Dep.) 46:10-47:1) — would just happen to coincide with Martin Luther King Day weekend, the Super Bowl,

Valentine's Day, and Easter weekend. Indeed, a neutral arbitrator looking at the same evidence came to the same conclusion: he upheld Jackson's dismissal. (Mot. 11-12.)

Jackson suggests that, absent performing a regression analysis or otherwise taking into account his non-holiday FMLA use, CSX could not possibly have concluded in good faith that he was misusing FMLA leave. (Opp. 11-12.) But just because Jackson also marked off FMLA on some non-holidays does not mean that his holiday use was legitimate.[4] Moreover, the Easter 2022 mark-off was not viewed in isolation; Jones and Ferrera both considered Jackson's broader FMLA record – including his having twice before signed waivers admitting to FMLA misuse – before making their discipline decision. *See* Doc. 71-19 at 1. And, to the extent he believed his non-holiday mark-offs were relevant, Jackson could have submitted that evidence at the hearing. He did not do so.

Instead, at the hearing, Jackson barely mustered any defense: he did not call any witnesses, submit any records beyond a non-descript, post-hoc doctor's note,

---

[4] Jackson also criticizes CSX for "not credit[ing] the holidays that [he] was in non-FMLA status, including Christmas 2021 or New Years 2021-22 . . . ." (Opp. 12.) But Jackson's work history report shows that he marked off FMLA for most of Christmas Eve and a substantial portion of Christmas Day; he did not work on either day. *See* Doc. 79-3 (Jackson Work History Report) at 12–13 (showing FMLA lay-off from 8:32 a.m. on December 22 until 11:55 p.m. on Christmas Eve, and from 4:51 p.m. until 10:31 p.m. on Christmas Day, after having been off in "Displaced" status earlier that day). Nor did Jackson work on either New Year's Eve or New Year's Day. *See id.* at 13 (showing that Jackson had a rest day starting at 10:30 p.m. on December 30 and was off in "Displaced" status on New Year's Day). This record does not help Jackson, which may be why he did not submit it at his investigatory hearing.

or offer any details whatsoever about his Easter absence. (Mot. 10-11, 17-18.) Paired with his prior admitted misuse under similar unexplained circumstances, CSX understandably did not find this half-hearted defense compelling.

b. *Jackson's failure to adequately explain the suspicious pattern of holiday mark-offs was legitimately taken into account.*

Jackson's dismissal was based both on his suspicious pattern of FMLA use and his failure to adequately explain it. He now seeks to blame CSX for the latter, claiming he had "no guidance as to what sort of evidence [he] could put forward to allay [CSX's] suspicions." (Opp. 14.) That is not the case: his other holiday mark-offs were circumstantial evidence that his Easter mark-off was dishonest, and this was made abundantly clear at his hearing. (Doc. 71-5 (Hearing Tr.) at 6-7, 9-11.) Jackson's failure to offer *anything* to adequately explain that pattern was legitimately taken into account.

Jackson also suggests (Opp. 14) that CSX could not legitimately rely on his failure to adequately explain his FMLA use because he did not bear the burden of proof in the investigatory hearing. This argument misses the mark. The burden of proof in an investigatory hearing is a "very low bar" of "substantial evidence" – evidence that a reasonable mind might accept as adequate to support a conclusion. *See* Doc. 79-5 (Wheaton Dep.) 12:24-13:4; 35:9-15; *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The circumstantial evidence here was sufficient to

satisfy that standard, as the arbitrator found. *See* Doc. 71-31 (Arbitration Award) at JACKSON000200.

c. There is no evidence that any of the managers who decided on Jackson's discipline did not truly believe he had been dishonest.

Jackson says that "CSX indicated 'it really didn't matter whether [the relevant party] experienced an episode over the holidays,'" (Opp. 13) but he is merely quoting the *Parker* opinion, not citing evidence specific to this case. There is no evidence that anybody at CSX believed "it really didn't matter" whether Jackson had experienced an episode; the investigation addressed that question. Moreover, employers "can lawfully act on a level of certainty that might not be enough in a court of law." *Total Sys. Servs., Inc.*, 221 F.3d at 1176. The circumstantial evidence provided ample basis for Jones and Ferrera to conclude that Jackson had been dishonest.

**3. Jackson fails to adequately rebut CSX's comparator evidence.**

Jackson attempts (Opp. 15-16) to rebut CSX's comparator evidence, but the out-of-circuit cases he cites concern a plaintiff's obligation at the *prima facie* stage; they say nothing about the defendant's evidence. *See Haywood v. Lock*e, 387 F. App'x 355, 359 (4th Cir. 2010); *Hayes v. Wall Recycling, LLC.*, 729 F. Supp. 3d 553, 561-62 (E.D.N.C. 2024). All of the comparators identified by CSX were T&E employees who (1) were subject to the same disciplinary policy; (2) violated the

same rule (Operating Rule 104.2, prohibiting dishonesty); and (3) received the same discipline (dismissal). *See* Mot. 18-19. The only distinguishing factor is that Jackson was dishonest about FMLA leave whereas the comparators were dishonest about something else – which undermines rather than supports his retaliation claim.

### C. Jackson's Remaining Claims Fail

***Interference***. Jackson does not dispute that, in order to prove FMLA interference, he must show that he was denied a benefit under the FMLA. (Mot. 22-23.) Nor does he dispute that his interference claim is a carbon copy of his retaliation claim; he concedes that the two "effectively merge" into one. (Opp. 17.) His interference claim fails for all of the same reasons as his retaliation claim does.

***Attendance Policy Claims***. Jackson has entirely failed to address CSX's argument that it is entitled to summary judgment on his attendance policy claims. *See* Mot. 22-30. He has therefore abandoned them. *See Davis v. CocaCola Bottling Co. Consol.*, 516 F.3d 955, 972 n.36 (11th Cir. 2008) ("[Plaintiff] did not defend the claim on summary judgment; he thus abandoned it.").

## CONCLUSION

CSX's Motion for Summary Judgment should be granted.

Dated: August 14, 2026

Respectfully Submitted,

*/s/ Thomas R. Chiavetta*

Thomas R. Chiavetta
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
tchiavetta@jonesday.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, a true and correct copy of the foregoing document was electronically filed using the CM/ECF system, which will serve all counsel of record.

*/s/ Thomas R. Chiavetta*