**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

NICHOLAS INGRODI, and BRAD JACKSON,

Plaintiffs,

v. Case No. 3:24-cv-451-BJD-LLL

CSX TRANSPORTATION, INC.,

Defendant.
__________________________________/

**ORDER**

**THIS CAUSE** is before the Court on Defendant's Motions for Summary Judgment (Docs. 71 and 72); Plaintiffs' Response (Doc. 79); and Defendant's Replies (Docs. 84 and 88). The two remaining Plaintiffs claim Defendant's "Points Based Attendance Policy" codified Defendant's policy of punishing its employees taking leave under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. Defendant's Motions for Summary Judgment followed.

1. Standard of Review

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the

pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

2. Brad Jackson

Defendant claims it fired Plaintiff Brad Jackson for dishonesty. Mr. Jackson worked as a conductor out of South Carolina. (Doc. 71.7 at 2). He was subject to Defendant's "CAPS Policy," that assessed points for being absent from work unless it was for an exempted reason, like FMLA leave. Id. at 3. The Policy allowed for the removal of accumulated points when an employee attended work for a calendar month without a non-exempted absence, of

which FMLA was not one. Id.[1] Essentially, Defendant created a system that did not punish employees for taking FMLA leave, but its use did prevent the accrual of a potential benefit.

Mr. Jackson was never disciplined under the CAPS policy. Id. at 7. His attendance points generally hovered around 0 and though he took some FMLA leave that would have prevented a reduction of his points in 2021 and 2022, he also took disqualifying non-FMLA leave during this time too. Id. at 9. He also could have lowered his point total in 2015 to 0 slightly earlier than he did because of his use of FMLA leave. Id. at 7. It had no effect on his employment whatsoever. Id.

Defendant's discipline policy provides that certain offenses warrant dismissal regardless of an employee's prior record. (Doc. 71.14 at 7). One such offense is dishonesty. Id. Defendant routinely terminates employees when they are dishonest, even when it has nothing to do with FMLA leave. Id. Defendant cites to Mr. Jackson's use of FMLA leave on Martin Luther King Jr. Day Weekend, Superbowl Sunday, Valentines Day, and Easter Weekend in 2022 as his dishonest use of FMLA leave. Id.; (Doc. 71.7 at 10).

Defendant accused Mr. Jackson of abusing FMLA in April 2022 and provided a hearing on the matter in May 2022. Id. at 6. Mr. Jackson provided

---

[1] The CAPs policy changed over the years but the provisions material to this case did not.

a doctor's note at the hearing asking that Mr. Jackson be excused from work on the dates in 2022, but Defendant felt the note did not tie Mr. Jackson's absences to a condition justifying the use of FMLA leave. (Doc. 71.19 at 1). Defendant also considered that Mr. Jackson had previously misused FMLA leave in 2016, 2017, 2019, and 2021. Id. His previous misuse had already resulted in a "Final Pattern Use Warning." Id.; (e.g. Doc. 71.23 at 2). Mr. Jackson admitted to abusing FMLA leave in the past and had even been suspended for five days in 2021. (Doc. 71.28 at 1).

Following his suspension, Defendant again warned Mr. Jackson about misusing his FMLA when he missed Superbowl weekend and Valentines Day. (Doc. 71.2 at 22). Mr. Jackson did not respond to CSX's Final warning, but did appear for a hearing on Defendant's accusation that he continued misusing FMLA leave through Easter Weekend. Id.; (Doc. 71.5 at 3). During the hearing, Mr. Jackson brought representation and stated that he was ready to proceed. (Doc. 71.5 at 3). Mr. Jackson did not provide any information to counter Defendant's position that he was misusing FMLA leave. (Doc. 71.5 at 9). After the hearing recessed, he obtained a backdated note on a pre-printed form that had an "x" beside a statement that read, "May not return to work/school on: 01/16/2022, 2/13/2022, 4/15/2022." (Doc. 71.4 at 24). It was signed electronically by a physician's assistant. Id. No explanation was given as to why Mr. Jackson could not work. The note did

not sway Defendant, who considered Mr. Jackson's multitude of infractions and warnings, and ultimately terminated his employment.

3. Nicholas Ingrodi

Mr. Ingrodi also worked for Defendant and utilized FMLA leave for years before his termination. (Doc. 72.21 at 2). He applied for and was approved for FMLA leave in 2014, 2015, and 2016. Id. His application for FMLA leave in 2017 was denied because he had not worked the requisite number of hours to be eligible for FMLA leave. Id. Mr. Ingrodi continued to take leaves of absence not pursuant to the FMLA in 2017 until he had accumulated enough points that he was terminated on April 15, 2018. (Doc. 72.13).

**I. FMLA**

"The FMLA grants eligible employees a series of entitlements, among them the right to a total of 12 workweeks of leave during any 12–month period for a number of reasons, including a serious health condition that makes the employee unable to perform the functions of the position of such employee." Jones v. Gulf Coast Health Care of Delaware, LLC, 854 F.3d 1261, 1267 (11th Cir. 2017) (internal quotations omitted). To safeguard these rights, "the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act[;] and retaliation claims, in which an

employee asserts that his employer discriminated against him because he engaged in activity protected by the Act . . . ." Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001) (internal quotations and citations omitted).

Plaintiffs assert both interference and retaliation claims.[2] "To state a claim that his employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that he was entitled to but denied the right. He does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." Id. at 1208. Defendant claims, and the undisputed evidence shows, that Plaintiffs were able to use all their leave available under the FMLA.

It is undisputed that Mr. Ingrodi used all of his FMLA leave in the years during which he was eligible for FMLA. He was not eligible for FMLA leave during the relevant time before his termination. "Relevant caselaw suggests that an employer does not interfere with an employee's right to reinstatement" when the employee is absent beyond the FMLA leave window. Jones, 854 F.3d at 1268. There is no evidence that Defendant interfered with either of the Plaintiffs' rights under the FMLA and their claims of interference are due to be denied. See Resolution Tr. Corp. v. Dunmar Corp.,

---

[2] In the Amended Complaint, Plaintiff refers to Count II as one for discrimination, which the Court construes as one for retaliation. (Doc. 29 at 10).

43 F.3d 587, 599 (11th Cir. 1995) ("Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

"[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Strickland, 239 F.3d at 1207. Of course, a plaintiff can establish this intentional discrimination through direct evidence. Absent direct evidence of intentional discrimination, the Court may consider circumstance evidence by applying "the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973)." Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010). "Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case by demonstrating (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." Id.

If the plaintiff presents a prima facie case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," and the burden of production then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). Then, if

the employer meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination or retaliation and was not the "true reason for the employment decision." Burdine, 450 U.S. at 256; see also Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) ("[T]he plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." (citing McDonnell Douglas, 411 U.S. at 804)). A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. "Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against her." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).

Pretext means that the reasons given by the employer were not the real reasons for the adverse employment decision. Hurlbert v. St. Mary's Health Care Sys., Inc. 439 F.3d 1286, 1298 (11th Cir. 2006). A reason cannot be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (quotation omitted) (emphasis in original); see also

Faircloth v. Herkel Invs. Inc., 514 F. App'x 848, 851 (11th Cir. 2013); Brooks v. Cty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). The inquiry as to pretext is based upon "the employer's beliefs, and not the employee's own perceptions of [her] performance." Holifield, 115 F.3d at 1565. The Eleventh Circuit has observed that the inquiry does not center "on reality as it exists outside the of the decision maker's head." Alvarez, 610 F.3d at 1266. So long as the employer's "reason is one that might motivate a reasonable employer, [the] employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000); see also Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012). To establish pretext, the plaintiff must identify "'weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1348-49 (11th Cir. 2007) (quoting Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir.2004)); see also Holland, 677 F.3d at 1055-56. However, an "'employer may [take action against] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" Walton v. Cives Corp., 491 F. App'x 29, 32 (11th Cir. 2012) (quoting Nix v. WLCY

Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)). The Court does not sit as a "'super personnel department,'" and will not second guess the business judgment of the employer. Chapman, 229 F.3d at 1030. Moreover, the Court is "'not in the business of adjudging whether employment decisions are prudent or fair. Instead [the Court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'" Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)).

Setting aside McDonnell Douglas, circumstantial evidence may create a triable issue regarding an employer's discriminatory intent and motivation "if the record, viewed in the light most favorable to the plaintiff, presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1320 (11th Cir. 2012). "'[T]he question becomes whether the evidence,' when viewed as a whole," and in this case, construed in favor of Plaintiff, "'yields the reasonable inference that the employer engaged in the alleged discrimination.'" Holland, 677 F.3d at 1056 (quoting Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1326 (11th Cir. 2011)); Moultrie v. Georgia Dep't of Corr., 703 F. App'x 900, 907 (11th Cir. 2017) ("A plaintiff can still survive summary judgment if she presents a convincing mosaic of

circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.") (internal quotations omitted).

"Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and alterations omitted). "Only the most blatant remarks, whose intent could mean nothing other than to" retaliate on an impermissible basis qualify as direct evidence. Id. (internal quotations omitted). Jones is instructive because the court confronted evidence of the plaintiff's employer's remarks about images depicting the plaintiff at a theme park while the plaintiff was on medical leave. After seeing the images, the plaintiff's employer told the plaintiff to "thank your wonderful staff, they just ratted you out" and "maybe if you're going to have a Facebook account, you shouldn't have it on public." Jones, 854 F.3d at 1266. On appeal, the Eleventh Circuit held that these remarks did not provide direct evidence of retaliation because they "not establish [the employer's] consideration of impermissible factors" but rather demonstrated a belief that the plaintiff "abuse[d] and misuse[d] [ ] FMLA leave . . . ." Id. at 1271 (emphasis in original).

In this case there is nothing approaching direct evidence of retaliation. The Court next evaluates whether Plaintiffs have presented a prima facie

case of retaliation. It is undisputed that Plaintiffs took FMLA leave and suffered an adverse employment action when they were terminated.[3] There is sufficient evidence that Mr. Jackson's use of FMLA leave caused his termination and insufficient evidence that Mr. Ingrodi's use FMLA leave caused his termination.

One way a plaintiff can establish causation is temporal proximity between the use of leave and the adverse employment action. Jones, 854 F.3d at 1271 ("Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.") (internal quotations omitted). "[F]or the purpose of establishing the causation prong of a prima facie case of FMLA retaliation, [temporal proximity] should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." Id. at 1272.

Mr. Jackson's use of FMLA leave and the hearing leading to his termination were nearly contemporaneous, meaning there was close temporal proximity. However, Mr. Ingrodi had not taken FMLA leave in more than a

---

[3] Defendant argues that the non FMLA leave taken between Mr. Ingrodi's termination and his prior FMLA leave prevents Plaintiff from establishing a prima facie case of retaliation. Generally, the use of non FMLA leave does not mean that Plaintiff did not engage in the statutorily protected activity of taking FMLA leave nor does it nullify an adverse employment action. Rather, the use of non FMLA leave may bear on the showing of causation. In this case, there is also a much more tenuous temporal nexus between Mr. Ingrodi's use of FMLA leave and his termination than with Mr. Jackson.

year before his termination. This gap is too large, standing alone, to provide adequate proof of causation. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). For this reason, Mr. Ingrodi's claims fail.

Assuming both Plaintiffs established prima facie evidence of discrimination, the Court finds that Defendant claimed a legitimate reason for terminating Plaintiffs. Plaintiffs have not shown Defendant's explanations were pretextual nor that there was a mosaic of circumstantial evidence giving rise to an inference of retaliation.

As to Mr. Ingrodi, he was continually absent while not on FMLA leave; progressed through the escalating CAPS system; and formally warned on three occasions before being terminated. As to Mr. Jackson, he admitted to misusing FMLA leave on multiple occasions in the past; admitted to dishonesty; and then continued using FMLA leave on special events and holiday weekends in a suspicious pattern. In light of Mr. Jackson's history of prior dishonesty and pattern of misusing FMLA leave on holidays, Defendant was free to conclude that Mr. Jackson was again abusing FMLA leave, and that termination was the only remedy given prior warnings and suspension did not alter his behavior.

While Mr. Jackson obtained a medical note stating that Mr. Jackson could not be at work on the days for which he used FMLA leave in 2022, the note was not controlling. Defendant discredited the note because it was obtained nearly 4 months after Mr. Jackson's challenged FMLA leave in 2022 started and after the hearing began and provided no connection between condition requiring FMLA leave and Mr. Jackson's absence. Mr. Jackson also now claims he admitted to dishonestly using FMLA leave in the past to move past the incidents, but that does not undermine Defendant's legitimate belief that Mr. Jackson admitted to misusing FLA leave at the time it fired him.

None of the evidence demonstrate that Defendant offered contradicting statements indicative of pretext, as the evidence, taken as a whole, is readily reconciled and no reasonable jury could construe the reasons offered as an effort to hide the fact that Plaintiffs were terminated for an impermissible reason.

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendant's Motions for Summary Judgment (Doc. 71 and 72; Motion) are **GRANTED**.
2. The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiffs, terminate all pending motions, and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida this ***20th*** day of November, 2026.

BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record